# Commonwealth *v.* Palmer, Appellant.

*Criminal law—Assaulting an officer in the discharge of his duty —Assault and battery—Display of red emblem—Case for jury.*

In a prosecution for assaulting an officer in the discharge of his duties, the case is for the jury and a verdict of guilty will be sustained, where there is sufficient evidence produced to prove that the defendant, during a time of unusual labor disturbance, when the display of the red flag, badge or other red emblem was prohibited, displayed a red flower in his buttonhole and, upon being admonished by one of the State constabulary, assaulted the officer by striking him violently in the face.

The question of defendant's motive in displaying the red emblem was properly submitted to the jury as follows:

"In determining whether the defendant or the prosecutor was the aggressor it is proper for you to consider why the defendant was wearing the red flower. Was it because he was a lover of flowers, or was it because he was defiant and flaunting the red into the faces of the peace officers? Was he in Homer City, that hotbed of trouble, on that day hunting eggs or was he there showing encouragement and sympathy to the reds, and thus aiding and abetting the lawless element which had terrorized this community? These are proper questions for this jury to consider as bearing on the question of who was the aggressor."

Argued November 10, 1919. Appeal, No. 50, April T., 1920, by defendant, from judgment of Q. S. Indiana County, March Sessions, 1919, No. 61, on verdict of guilty in the case of Commonwealth v. Davis A. Palmer. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Indictment for assaulting an officer in the discharge of his duty, and assault and battery. Before LANGHAM, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on which judgment of sentence was passed. Defendant appealed.

346    COMMONWEALTH *v.* PALMER, Appellant.

Assignment of Errors—Opinion of the Court. [73 Pa. Superior Ct.

*Errors assigned* were various rulings on evidence and refusal to grant a new trial.

*E. Walker Smith,* and with him *W. B. Adams,* for appellant.

*George J. Feit,* and with him *Wilmer H. Wood, E. E. Creps* and *Charles Margiotti,* for appellee.

OPINION BY ORLADY, P. J., February 28, 1920:

The defendant was charged in the first count in the indictment with assaulting an officer in the discharge of his duty, and in the second with assault and battery. A verdict of guilty on each was returned, and the defendant was sentenced thereunder. The controlling facts of the case are fairly summarized in the charge of the court to the jury, as follows: "While this is a case of ordinary assault and battery, the alleged offense came at a time when extraordinary and unusual conditions existed in Homer City where the alleged violation of law was committed. It is in evidence that on the 1st day of May of this year, the date of the trouble here complained of, the people not only of Homer City, but of Indiana, Graceton, Coral and the surrounding communities were terrorized, and in fear of threatened violence to life and property by an element now in this country that is opposed to organized government, and to our institutions generally, known as the Bolsheviki. In order to repel this threatened attack the sheriff of our county, who is the chief peace officer of the county, together with hundreds of other loyal citizens of these several communities, set about to devise ways and means to accomplish this result. A score of members of the State police were called to aid, hundreds of deputy sheriffs were sworn into service, public meetings were held to inform the public of what was threatened, and what was necessary to be done to obviate trouble. Certain prohibitions were placed upon citizens, and

notice thereof was promulgated by the newspapers of our country, by posters, by public addresses and otherwise. It was a matter of common knowledge that red flags, red banners and streamers are a part of the insignia of this dangerous element, so among other prohibitions placed upon our citizens was that no red flag or badge or button or other red emblem should be worn. The purpose of all this was a call to the leal and loyal citizens of these communities to not do anything that would encourage or show sympathy with Bolshevism. The people of our county had a right to do all the things that we have mentioned that was done, in order to preserve the peace and good order of the threatened communities on that particular 1st day of May. A full compliance with the requests was the best test of good citizenship.

"The evidence along these lines was admitted for the purpose of showing and having the jury understand the concern of our people, and to explain the presence of the State policemen at Homer City on May 1st the date of the alleged offense."

The peace officers were energetic in the discharge of their duty to prevent disorder and violence. The defendant, while not actively identified with these agitators and disturbers of the peace could not help but know, that by his conduct in exhibiting the red emblem on that day he was in defiant antagonism to the sheriff's proclamation. It is idle for him to say that he did not know of the tenseness of the public mind, and the anxiety on the part of the local and State authorities to prevent a violent demonstration on May 1st by parties who were in active and violent opposition to our system of government. He was present at a public meeting in the courthouse when many prominent citizens addressed the audience, and urged upon all the necessity of sustaining the lawful authorities in preserving the public peace. His display of the red emblem at the time he did could be construed only one way—that he wanted all

who saw him, to know that he was in accord with the threatening rioters. There can be no neutral ground in such an emergency. Any other finding would be an absurdity. His avowed love of flowers was but a silly subterfuge. His pretended lack of knowledge of the threatened violence was directly contradicted by his own testimony, as well as it was a challenge to his intelligence. He evidently intended to make an exhibit of himself by having a conflict with the State constabulary, as the evidence is overwhelming that after being admonished to not wear the prohibited emblem by a street car conductor, and a member of the State constabulary, he assaulted the guardian of the peace by striking him violently in the face. His prominence as a citizen, added special encouragement to the illiterate aliens who would be influenced by his conduct. Having found the trouble he sought, he should not complain of the success of his efforts. His plain duty as a citizen was to assist the officers of the law and not oppose them. The disputed questions were purely of fact, and the finding by the jury was fully warranted by the evidence, that he was the aggressor on the occasion. Fortunately for him, as well as the public peace, he was promptly placed in custody. The action of the sheriff, the municipal authorities and the State constabulary is to be commended, in averting a serious riotous disturbance with consequent destruction of life and property. He had a patient and fair trial, and the evidence admitted, under his objection, was necessary to determine the controlling conditions which made the sheriff's proclamation and public protest necessary. The question of his motive in displaying the red emblem was properly submitted to the jury, as follows: "In determining whether the defendant or the prosecutor was the aggressor it is proper for you to consider why the defendant was wearing this red flower. Was it because he was a lover of flowers, or was it because he was defiant and flaunting the red into the faces of the peace officers? Was he in Homer City, that hot-

bed of the trouble, on that day hunting eggs or was he there showing encouragement and sympathy to the reds, and thus aiding and abetting the lawless element which had terrorized this community? These are proper questions for this jury to consider as bearing on the question of who was the aggressor." There were no special questions of law involved in the trial, and every question of fact was fairly and adequately disposed of by the trial judge.

We see no reversible error in this record. The assignments of error are overruled, and the judgment is affirmed. The record is remitted, and it is ordered that the appellant appear at such time as he may be called and that he be by that court committed until he has complied with the sentence imposed or any part of it that had not been performed at the time this appeal became a supersedeas.